# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

KEVIN KENNEY,

    Plaintiff,

vs.                                                                            No. 18-cv-728 MV/SCY

DEPARTMENT OF CORRECTIONS, *et al*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's *Pro Se* Tort Complaint (Doc. 1-1), which was removed to this Court on July 30, 2018. Plaintiff contends that prison officials were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Defendants argue that Plaintiff's complaint fails to state a cognizable claim for relief. Having reviewed the matter under Rule 12(b)(6) of the Federal Rules of Civil Procedure and 28 U.S.C. Section 1915A, the Court will allow some of the claims to proceed and will dismiss some of the claims, but with regard to certain of the claims that will be dismissed, will grant leave to amend.

## I. Background[1]

Plaintiff was previously incarcerated at the Northwest New Mexico Correctional Center (NNMCC). (Doc. 1-1 at 3). On April 26, 2018 at about 9:30 a.m., he began losing a large amount of blood from his rectum. *Id.* After cleaning the blood, Plaintiff went to the medical unit. *Id.* He described the bleeding to an intake nurse, who then spoke with Nurse Practitioner (NP) Bailly. *Id.*

---

[1] The background facts are taken from Plaintiff's complaint (Doc. 1-1). For the limited purpose of this ruling, the Court assumes that Plaintiff's allegations are true.

Plaintiff was still bleeding as he waited outside of NP Bailly's office. *Id.* He could overhear her talking to another inmate and showing him pictures of her dogs. *Id.* Plaintiff returned to his unit to shower, as he was bleeding profusely. *Id.*

Plaintiff described the aforementioned events to Officer Aragon during the "11:00 a.m. Count." (Doc. 1-1 at 3-4). Aragon directed Plaintiff to submit an informal complaint. *Id.* at 4. Plaintiff explained that he did not have time to prepare a complaint because he was losing large amounts of blood, but he ultimately returned to his dorm and complied with Aragon's instruction. *Id.* When the 11:00 a.m. Count was complete, Plaintiff informed Officer Valles that he had a medical emergency and needed to go to the medical unit. *Id.* Valles directed Plaintiff to "hold on until chow is called for the unit." *Id.* Plaintiff waited but continued to lose blood. *Id.* He eventually left the pod as the door opened for another inmate. *Id.* He encountered a captain in the hallway, who called medical officials and directed them to see Plaintiff as soon as possible. *Id.*

Plaintiff arrived at the medical unit some time after 11:00 a.m. (Doc. 1-1 at 4-5). He described his symptoms to NP Bailly, and she stated that she could only order laboratory tests and schedule a colonoscopy. *Id.* at 4. The intake nurse pricked Plaintiff with a needle three times before successfully drawing his blood. *Id.* A few minutes later, NP Bailly said she could not schedule a colonoscopy and that Plaintiff must go to the emergency room. *Id.* at 5. Plaintiff was transported to Cibola General Hospital (Hospital), where he was admitted. *Id.* On the following morning (April 27, 2018), doctors performed surgery and successfully stopped the bleeding. *Id.*

The Hospital discharged Plaintiff on April 28, 2018. (Doc. 1-1 at 5). When he returned to NNMCC's medical unit for a clearance, a nurse stated that NP Bailly was changing some of Plaintiff's medications. *Id.* Plaintiff protested, but the nurse directed him to take the medications

2

that appeared on the med-cart that evening. *Id.* Plaintiff slept through the med-cart delivery, and prison officials would not dispense his medication later that evening. *Id.* at 6. The next morning (April 29, 2018), a nurse informed Plaintiff that NP Bailly planned to dispense his blood-thinner in the morning rather than the evenings. *Id.* Plaintiff informed the nurse that his heart went into "fib-mood" at night, which increases the risk of heart failure or stroke. *Id.* The nurse immediately dispensed the blood thinner, but there were no other medications for Plaintiff on the med-cart that day. *Id.* Plaintiff alleges that he still has not received a new order for Toprol (a beta blocker); Cyclobenzaprine (a muscle relaxant); or Tylenol. *Id.*

On June 6, 2018, Plaintiff filed the complaint in New Mexico's Thirteenth Judicial District Court, Case No. D-1333-CV-2018-0178. (Doc. 1-1). The Complaint names seven Defendants: (1) the Department of Corrections; (2) Warden Betty Judd; (3) Officer Valles; (4) Officer Aragon; (5) Health Services Medical Director Dyanne Leyba; (6) NP Bailly; and (7) Centurion Health Care. (Doc. 1-1 at 1). Plaintiff seeks unspecified money damages under 42 U.S.C. Section 1983, the Eighth Amendment, and state tort law based on the following claims:

(Count 1): Medical Malpractice - NP Bailly inappropriately refused to respond to Plaintiff's medical emergency;

(Count 2(a)): Cruel and Unusual Punishment/Deliberate Indifference to Medical Care - Defendants intentionally denied emergency medical care; and

(Count 2(b)): Failure to Carry out Medical Orders - NP Bailly refused to dispense medication and interfered with treatment in violation of the Eighth Amendment.
(Doc. 1-1 at 6-7).

Defendants CoreCivic, Judd, Valles, and Aragon removed the Complaint to this Court on

3

July 30, 2018. (Doc. 1). Those same Defendants also filed a Motion to Dismiss under Rule 12(b)(6) (Doc. 3).

## II. Preliminary Motion for Default Judgment

As an initial matter, Plaintiff argues that he is entitled to a default judgment against the New Mexico Department of Corrections (NMDOC), which did not respond to the Complaint. (Doc. 10). However, a defendant is not required to reply to an action brought by an inmate until the Court orders a response. 42 U.S.C. § 1997e(g)(1)-(2). The Motion for Default Judgment (Doc. 10) is therefore denied.

## III. Standard of Review Under Rule 12(b)(6) and Section 1915A

Rule 12(b)(6) requires the Court to accept all well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). The complaint must set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief. *Id*. at 570. A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Where, as here, a prisoner civil rights action is removed from state court, the Court must also perform a screening function under 28 U.S.C. Section 1915A. Under that section, the Court

4

has discretion to dismiss a prisoner civil rights complaint *sua sponte* "if the complaint … is frivolous, malicious, or fails to state a claim on which relief may be granted." 28 U.S.C. § 1915A(b). In conducting the § 1915A review, the pleadings of the *pro se* prisoner "are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Courts are directed to overlook "failure to cite proper legal authority, … confusion of various legal theories, … poor syntax and sentence construction, or … unfamiliarity with pleading requirements." *Id.* Further, *pro se* plaintiffs should ordinarily be given the opportunity to cure defects in the original complaint, unless it is clear any amendment would be futile. *Id.* at 1109.

Plaintiff primarily raises constitutional claims under the Eighth Amendment and 42 U.S.C. Section 1983. (Doc. 1-1). "A cause of action under section 1983 requires the deprivation of a civil right by a 'person' acting under color of state law." *McLaughlin v. Bd. of Trustees*, 215 F.3d 1168, 1172 (10th Cir. 2000). The plaintiff must allege that each government official, through the official's own individual actions, has personally violated the Constitution. *See Trask v. Franco,* 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between the official conduct and the constitutional violation. *Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask,* 446 F.3d at 1046. Plaintiff's constitutional claims fall into two categories: (1) claims against individual wrongdoers (NP Bailly; Officer Valles; and Officer Aragon); and (2) claims against entities and prison supervisors (NMDOC; Warden Judd; Health Director Leyba; and Centurion). The Court will address each category below.

    A.    <u>Claims Against the Individuals (NP Bailly, Valles, and Aragon)</u>

Plaintiff alleges NP Bailly, Valles, and Aragon were deliberately indifferent to medical

needs. To state an Eighth Amendment claim, a plaintiff must demonstrate he experienced a "substantial risk of serious harm," and that the prison "official was subjectively aware of the risk." *Wilson v. Falk*, 877 F.3d 1204, 1209 (10th Cir. 2017). This test is satisfied when prison officials ignore a medical issue "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). Plaintiff alleges the individual Defendants dismissed his concerns when he was bleeding profusely, and that Bailly interfered with critical medications used to prevent heart attack and stroke. Because Plaintiff obviously required more care under these circumstances, the Complaint states an Eighth Amendment claim against NP Bailly, Valles, and Aragon. The Complaint also states a negligence claim against NP Bailly, as deliberate indifference requires a greater showing than medical malpractice. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The Court therefore will deny the Motion to Dismiss (Doc. 3) as it relates to Valles and Aragon. Bailly has already filed an answer, but the Court will require Valles and Aragon to file an answer within thirty (30) days of entry of this Order. After all answers are on file, the parties can expect the Magistrate Judge to hold a Rule 16 scheduling conference or, if appropriate, order a *Martinez* report in lieu of formal discovery. NP Bailly, Valles, and Aragon are also advised that the Order Staying Defendants' Obligations Pending Initial Review (Doc. 12) is no longer applicable as to them.

B. <u>Claims Against the Entities and Prison Supervisors</u>

With respect to the remaining claims against NMDOC, Warden Judd, Health Director Leyba, or Centurion, it is unclear how those Defendants were personally involved in the constitutional violation. To "succeed on a § 1983 supervisory-liability claim," the plaintiff must

6

show "the defendant 'promulgated, created, implemented, or possessed responsibility for the continued operation of a policy that ... caused the complained of constitutional harm' and 'acted with the state of mind required to establish the alleged constitutional deprivation.'" *Moya v. Garcia*, 895 F.3d 1229 (10th Cir. 2018) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)). A similar rule applies to entity defendants. To be liable under Section 1983, the entity must have "had an 'official ... policy of some nature ... that was the direct cause or moving force behind the constitutional violations." *Dubbs v. Head Start, Inc*., 336 F.3d 1194, 1216 (10th Cir. 2003). Plaintiff has not alleged that the deprivation of medical care resulted from any specific policy promulgated by Warden Judd, Health Director Leyba, or Centurion. Further, the Tenth Circuit has held that the "New Mexico Department of Corrections is not a 'person' subject to suit under § 1983." *Blackburn v. Dep't of Corr*., 172 F.3d 62 (10th Cir. 1999). *See also Jordan v. Doe*, 15 F. App'x 564, 566 (10th Cir. 2001) (same).

For these reasons, the Court will dismiss all claims against the NMDOC with prejudice. The Court will also dismiss all claims against Judd, Leyba, and Centurion without prejudice, but grant leave to file a supplemental pleading against those Defendants.[2] Any such supplemental pleading should address how the deprivation of medical care resulted from specific policies promulgated by Warden Judd, Health Director Leyba, and/or Centurion. If Plaintiff declines to timely file a supplemental pleading against Judd, Leyba, and Centurion or files a pleading that similarly fails to state a cognizable claim, the Court may dismiss those defendants from this case, and the claims will proceed only as to NP Bailly, Valles, and Aragon. Further, any supplemental

---

[2] The Court will order a supplemental pleading, rather than an amended complaint, so that Plaintiff is not required to incorporate/reallege his allegations against the individual defendants.

pleading is subject to screening under 28 U.S.C. Section 1915A. If the pleading survives initial review, the Court will order any remaining Defendants to file a responsive pleading. Until that time, Judd, Leyba, and Centurion are not required to respond to the supplemental pleading.

**IT IS ORDERED** that Plaintiff's Motion for Default Judgment (**Doc. 10**) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss With Prejudice (**Doc. 3**) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants **NP Bailly, Valles, and Aragon** survive initial review and will not be dismissed; and **Valles and Aragon** must file an answer within thirty (30) days entry of this Order.

**IT IS FURTHER ORDERED** that Plaintiff's claims against the **New Mexico Department of Corrections** are **DISMISSED WITH PREJUDICE**; and no additional claims will be allowed against that Defendant.

**IT IS FINALLY ORDERED** that Plaintiff's claims against **Judd, Leyba, and Centurion** are **DISMISSED WITHOUT PREJUDICE**; and Plaintiff may file a supplemental pleading against **Judd, Leyba, and Centurion** within thirty (30) days of entry of this Order.

_____
HON. MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE